The next case, number 22-1875, United States v. Michael D'Angelo. At this time, will counsel for the appellant please introduce himself on the record to begin. Good morning, I'm Kevin Lerman. I'm arguing on behalf of the appellant. Mr. D'Angelo, may I reserve three minutes? Yes, you may. Thank you. May it please the court, when the district court denied a multi-pronged sentence for induction motion in 2022. It issued a detailed order acknowledging that the laws changed since Mr. D'Angelo was sentenced in 2014. His main assault conviction, which today is over 17 years old, is no longer a crime of violence, following the U.S. Supreme Court decision in boarding v. United States. A person in his shoes today would now be sentenced on an empirically calculated GSR, not under the career offender label that Congress had the sentencing commission peg directly to the maximum statutorily allowed sentence. In today's argument, I'll aim to answer two questions. Was it air for the district court to hold that the changed circumstance due to boarding was not extraordinary and compelling without some additional separate circumstance? And two, when the district court was exceedingly close to finding extraordinary and compelling circumstances, could this court somehow find that the district court separately conducted 3553A analysis was free from air? Mr. Lerman, you might want to put on that list the significance of the district court's finding on danger to the community, because it does seem that that finding might be preclusive under both versions of the policy statement. Sure. Why don't I start there, Judge Cayetano? So that finding, when this court has gone through, this court by my count has addressed nine or ten, but I think nine, published sentence reduction appeals since 2021. This court hasn't found that there's a separate step for dangerousness. And so this court has addressed dangerousness within the scope of 3553A analysis. Now the government below did ask the court to deny the motion on dangerousness alone, but the district court goes through and it says the factor that concerns the court the most is protecting the public under 3553A2. But what's wrong with that? I don't understand what you're saying the error is in the court giving emphasis to dangerousness. Yes, Judge Thompson. The error there is that we, I think the biggest error in reference to dangerousness is under the 3553A factors. So this court has applied the same standard of review for sentence reduction appeals as it does in original sentencing proceedings. And so starting from early on, we see the court in Secocia adopting the presumption, absent some contrary indication that a sentencing court considered all mitigating factors and anything not specifically mentioned, was simply unpersuasive. You look at the court's decision and it considered from A to Z. This was one of the factors, the dangerousness that the court's going, literally addressing everything. We don't see that in the actual 3553A analysis, which spans about four paragraphs. And we see numerous contrary indications that the district court didn't consider what Borden revealed about whether Mr. DeAngelo is still a career offender. So someone in his shoes starts off in an actual empirical guideline sentence range, which the government agrees is at least 50 months lower. So here are some of the contrary indications. Let me add this to the twist and you might address it. The district court at the original sentencing varied downwards also. So this is a person who is starting much lower. That's right, Judge Helpe. And when the district court goes through in its decision, which is at the agenda from pages 5 to 7, the district court notes in its calculation with the same downward variance. So it contemplates the same downward variance and states that it would have arrived today at a range of 120 to 150 months. So that's where we get the 50-month downward range. So then we see highly sympathetic language from the district court. The district court here, this is not a district court where it's saying, I would have given this sentence regardless. This range that the court ultimately arrived at uses the career offender guideline as a starting point and that's how it gets to its ultimate range of starting with a low end of 168 Let me ask you a textual point and then I'll ask you a common sense point. On text, when I look at the policy statement, both versions of it, it says the court may reduce the term of imprisonment if the court determines that 1, 2, and 3. And 2 is the defendant is not a danger to the safety of any other person or to the community. So to the extent it follows that language, how could a court reduce the term of imprisonment if it does not find that the defendant is not a danger to the community? When you say you can do it if you find three things and the court specifically says it can't find one of those things, why isn't that the end of the inquiry? Well, there's at least two complications there. The first is, now that the policy statement has come into fruition on November 1st of 2023, that is a slightly different inquiry. At the time, there was no applicable policy statement and at best, whether now or then, at best, it can be one of numerous considerations because it's not just a release statute, it's a sentence reduction statute and that's why the 3553A analysis is so important. So I think I hear you saying that even though what I just suggested is the proper way to read the text is correct, the court, at the time it decided this, wasn't obligated to follow the policy statement because then it wasn't directly applicable to the courts. Yes, Judge Gatta, that's my first point. The second, I'm sorry. Go ahead. Okay, so the second point is then it's a matter of 3142G analysis and some of those 3142G factors overlap those that are relevant under 3553A and the threshold inquiry that would be different now, both quantitatively and qualitatively, now that someone in Mr. D'Angelo's shoes is not a career offender. Let me ask you now the common sense question. Even if we put aside the text, can you imagine a district court granting this relief in terms of reducing the term of imprisonment if it thought the person might well be a danger to the community? I think that that question depends on context. So in the abstract, if the district court has discretion to release now or two years from now and... Well, talk about it in terms of this case because that's the context that we're looking at. The court found that your client was still a danger to the community. So I'm trying to figure out what is the argument for saying that given that finding, the court should have reduced the sentence anyway. Because we don't see either from the court or from the government a position that if the court found that there were extraordinary and compelling circumstances, then the analysis would have worked out the same. And the court even notes that much of the difficulties that Mr. DeAngelo has dealt with in prison were foreseeable at the time of sentencing. He had this severe brain damage. He had severe mental health issues. And then I think it's important to look at the language that the court actually states. So the district court states starting at 3553A that Mr. DeAngelo stumbles. And this is after not finding because it felt bound by Trankler. It felt bound that the reason presented was just a classic post-conviction argument, which is incorrect. It's incorrect under Rubel-Caba and it's incorrect under all the cases and the guidelines that have come out since. And it says he stumbled. It didn't say he falls flat on his face. It didn't say he hit a wall. It didn't say he comes up against a crocodile-infested river and he can't cross it. He stumbles. The rest of the decision says, for example, the court's concerned. But then what does the court say after? His write-ups are likely due to mental health. That's at addendum 17. His prior convictions, as it said at the original sentencing and in the reduction order, are likely due to mental health. And one of the key things that it notes is that the only mental health condition that's in sustained remission is opioid use disorder. And we see with the supplemental letter that Mr. D'Angelo submitted to the court that that was one of the big drivers of this offense, now more than 10 years ago. And so concern, you know, as they say, concern is the cousin of compassion. So if we start with a correct weighing of the circumstances and find that there's extraordinary and compelling reasons to reduce a sentence given the roughly five-year gap between the sentence here and what somebody would receive today, then we reach a very different weighing. We also see in the original sentencing the court wanted to apply five years of supervised release. And in this case, if there's a reduction, the court can apply additional term of supervised release. We see, in regards to danger, it being framed in district court as a greater danger today versus if he serves out until the expiration of the sentence. And we see the court somewhat sympathetic that Mr. D'Angelo's treatment needs weren't always being addressed in the Bureau of Prisons. So that's why, going from the abstract to this case, there are numerous features under a weighing of 3142G. And now, if the case were to be returned under 1B1.13, which expressly authorizes consideration of this sort of reduction, that this court may very well result in a different outcome. And this is part of the reason why, in Trinkler, the court sends the case back because the district court didn't have the full benefit of what this court called the standard-setting case of Ruvalcaba. And so, this court below had just seen the standard-setting case of Ruvalcaba, but then the court sees Trinkler come by, which sees very different, which are really traditional post-conviction grounds. And that's how the court stopped short of finding extraordinary compelling circumstances. Thank you. You have three minutes for rebuttal. So we ask the court to vacate the sentence. Thank you, counsel. At this time, would counsel for the appellee please introduce themselves on the record to begin? Good morning, your honors, and may it please the court. My name is Jean Simivan, and I represent the government in this case. This case is an appeal of a denial of a motion for compassionate release. And all of the issues in this case, when distilled to their essence, can be summed up neatly and are simple. Because this court denied DeAngelo's petition for compassionate release because the 3553A factors counseled against release.  the district court considered the nature and circumstances of the offense, the history and characteristics of DeAngelo, and the protection of the public, with a particular emphasis as this court observed, on danger to the public. This was all that is necessary for this court to affirm the district court's judgment. And it has affirmed district court's findings on the basis of the 3553A factors in past cases. And thus, it was not necessary for the district court to separately determine whether or not extraordinary circumstances were met. This said, the district court did go through the analysis necessary that this court could look to and affirm, without making new findings of its own, that DeAngelo did not press that threshold either. First, looking to the 3553A factors, in a little more detail. It seems like there's just a fundamental unfairness in this situation because had the DeAngelo been stricken at the time he was originally sentenced, his sentencing range would have been much different. And it doesn't mean that the district court, of course, couldn't have varied upward. But we always say the low start is to start with the correct sentencing range, otherwise it's considered procedural error that we reverse. That's true, Your Honor. At the time, both the forced clause and the residual clause would have rendered DeAngelo a career offender. And there were two changes here that operated in tandem to create the Borden issue. The first was the finding of the residual, I won't go through the full procedural history, it's in our brief, it's a little complex, but essentially what it comes down to is the residual clause no longer being in effect. Crucially, this was left in play by a series of cases that came out after Johnson. And it's only the fact that the sentencing guidelines for Amendment 798 removed it subsequently that would produce a But crucially, that guideline amendment was not retroactive. So the sentence as rendered at the time remains in effect. And that is, in effect, a policy choice to not make this retroactive. Certainly, I take Your Honor's point as to the issue of fairness, but this was a deliberate decision on the part of the Sentencing Commission. And this change by itself is not sufficient to present the issue. It was also required for Borden to present this even as a possibility for purposes of something that may be considered for extraordinary and compelling circumstances. Because, since D'Angelo met both the force and the residual clause, both would have to fall in order to present any material change here. Now, to be fair, they both did. But to the appellant's point about Trankler, it is just difficult for me to see or see the Court's decision in any way where it felt bound by Trankler in the sense that it could not consider the Borden 798 issue for purposes of extraordinary and compelling. The Court's language is clear on this point. It recognized and quoted this Court in Trankler by saying that, ordinarily, this type of argument without more will not carry the day for purposes of compassionate release. But Mr. D'Angelo offers more. If you then go to Section E of its analysis, when it takes into account all four grounds identified by D'Angelo for extraordinary and compelling circumstances, it references all four. This indicates that it considered all of them in tandem. So there is no error under Trankler here. Even if, for the sake of argument, the District Court found that it could not consider this under Trankler or through some sort of verbiage, if you look at its text over the course of its analysis, it is apparent that it's identified every ground that D'Angelo raised and simply found that this did not add up to something that merited relief. Or rather, the clear gravamen of the analysis is that it should not reach that point. This can be seen moving from Borden to the next ground D'Angelo raised is mental health and subject to some contention in the briefs. But what is ultimately material here is that if you look at the District Court's language, it says that it had already taken account of D'Angelo's brain injury and mental health in doing the variance in its initial sentencing. And that is also the language that was reflected in the cases upon which it relied if you go through and read those opinions. There was no error in doing this and in fact, if the Court were to give D'Angelo credit again for the same basis that already accorded him a variance, that would lead to perverse incentives where defendants would simply apply for resentencing hoping to benefit from the same factors that they had already received leniency on. It simply wouldn't make sense in order to accord D'Angelo additional credit on this point once again. The Court also took into... But his argument isn't just that he has mental health problems. His argument is also that he's had treatment for his problems that merit some consideration and further variance. At least, that's how I understand his argument. Precisely, Your Honor. That's the next point under mental health and brain injury because he did allege that he didn't receive sufficient treatment before the District Court. But the District Court addressed this. It noted that correctly identifying the standard that this would be for purposes of the Eighth Amendment and looking at what ruby we should use. It just doesn't cross that threshold. Also, relevantly, the District Court correctly noted that based on the record it seems as though it was D'Angelo's own failure to cooperate to some point with his treatment and his disciplinary issues that were interfering with his ability to benefit more from treatment. In fact, the District Court correctly observed that D'Angelo had demonstrated some improvement, but much like his efforts at rehabilitation this simply wasn't enough. In fact, the District Court... Why would you flat out prohibit courts from considering in this context the factor that they already took account for in the original sentence? So, Your Honor... It's one thing to say, I already accounted for it and I would do the same today so it nets out to zero so I'm not going to do anymore. But a judge might think, you know, in the intervening years I've thought differently about this issue than I did at the time and I would treat it differently. Are you saying a judge is precluded from doing that? No, Your Honor, and that is not what the District Court's decision said, notwithstanding any language that might have been in the government's brief below. To your point, Your Honor, I take that point. What perhaps, especially in the context of different circumstances, it could conceivably warrant additional consideration. But by the same token, there was no abuse of discretion or error in the District Court looking at the record before it and concluding I have already provided you credit on this basis, which is the verbiage it used, and it does not make sense here to provide additional credit on a variance I have already given you. Uh... And so the court did take into account mental health and brain injury on both this and the treatment angle and simply found that this is not extraordinary and compelling, not beyond the mind run. Counsel, let me ask you this hypothetical question. Let's assume Judge Torreson below, considering all these same arguments, said, well, they do have some merit but they're still really weighing the dangerousness down, but I'm going to vary, you know, resentence and vary 35 months less. Counsel, we're still arguing that was error or should have gone, it would still be your same argument, you know, that's the standard, correct? If I understand your question correctly, it's the dangerousness essentially makes the extraordinary... Let's assume she had decided, yes, I'm going to find extraordinary compelling circumstances, I'm going to go down but based on the dangerousness I'm not going to go down as much as defense wants, I'm going to go down 30 months, something like that. Still the result would be the same, right? The judge did the analysis and used the discretion. Yes, the result would be the same, Your Honor. Just to make sure I understood correctly, I do want to point out that the extraordinary and compelling circumstances excuse me, that the 35-53A factors must be met or they must not counsel against release to achieve any reduction, so it's not merely a matter of degree, it's a binary inquiry right there. Yeah, but assuming she did 35-53A factors considered dangerousness, considered the argument counsel making she could have done it, she had discretion she didn't do it. Yes, she certainly could have had discretion to find that extraordinary and compelling circumstances existed and then if her analysis under 35-53A had been different, she could have afforded some degree of reduction on that basis. Some of the cases that have come up on appeal  issue, the judges have actually gone below. Oh, I see what you're saying, Your Honor. So yes, not to further belabor extraordinary and compelling because as mentioned, really the crux of this case and all that this court needs to affirm are the 35-53A factors and the court spent two pages discussing these. It discussed, again, nature and circumstances of the offense, which was violent its history and characteristics and DeAngelo's criminal history is prodigious as you can see here. The district court recounted this at length and that makes it clear that this was the more salient factor than any sort of artificial career offender category that was feeding its protection of the public and dangerous analysis. And to that point again, consider protection of the public and the court was well positioned to evaluate the 35-53A factors being the same district judge who did the sentencing and so that only further underscores the reliability of this analysis. Now, as to the protection of the public, there's been some dispute amongst the parties as to where exactly this should go out and it does seem as though there should be some distinction between them but as district court decisions in the District of Maine that we've discussed have observed dangerousness is naturally implicated by the protection of the public. Who or what are you protecting the public from? The defendant and that only makes sense if the defendant poses some danger. As to the reason to separate it out and create a separate danger inquiry that does make some sense if you are looking at potentially a different threshold of dangerous. Protection of the public is simply one 35-53A factor that isn't given any unusual prominence in that part of the statute. Danger, by contrast, is listed out as a single line item. So, as a separate inquiry, that would make sense if the defendant were so plainly dangerous that release could not be congenital under those circumstances. As to the issue of 3142G, the appellant has made some arguments to the effect of the court needing to go through and consider conditions of release. Setting aside that I have not been able to find any court that specifically analyzed an issue of conditions of release on appeal from a compassionate release response within the statute, it simply doesn't make sense to read every part of 3142G into the dangerous analysis because it references other things, for example, such as the weight of the evidence or the need to assure the defendant's appearance, which are not concerns a district court will have when trying to determine whether compassionate release is appropriate. And finally, looking to the revised guidelines, again, this court should not hold the district court to apply guidelines that were not in effect at the time that it rendered its judgment here. And this decision, Trinkler as well as the U.S. v. Davis decision the appellant relies on would both counsel against that as well. Moreover, it's apparent that even under the new guideline framework, if this court were to remand for reanalysis, the result would be the same. As the bench observed, danger remains a factor in the analysis, both under the old guideline, which was at the time not strictly applicable but only advisory. You use the word factor. You say it's a factor in the analysis. Is it a requirement? How does the government read 1B113, the reference to the three things that a court must determine? It's a worthwhile distinction, Your Honor. The government reads both the old guideline and the new guideline as listing danger as a requirement. The distinction is that the old guideline only applied to BOP-initiated petitions. And so it would not have been binding on the district court at the time, simply non-binding guidance in accordance with this court's decision, rivo cava. So that's essentially the difference there. And it ultimately becomes a moot point because if it were to be remanded on the technicality of using danger as a dispositive matter, it would reach the same result because the new guideline would then apply. And in any event, that's not what the court did here. But I'm not sure if you answered Judge Cahill's question. Is it the government's position that it is a separate requirement? If I was unclear, Your Honor, I'm sorry. The government does have the position that it is a separate requirement under both guidelines. The only distinction I was trying to make was that the 2018 guidelines, when this court rendered its decision on 2022, was just separate. Yes, exactly. And so then it was a requirement of the old guidelines, but the distinction is under the 2022, the old guidelines did not strictly apply. Thank you, Your Honors. Thank you, Counsel. At this time, if Counsel for the Appellant would please reintroduce himself on the record. He has a three-minute rebuttal. Good morning once again. Kevin Lerman on behalf of the Appellant. Mr. D'Angelo, I'd like to start just by stressing what we can observe from the district court's order in terms of whether the court actually felt precluded by Trankler from looking at the career offender guideline change in the law. And so the points in the record that I would direct the court to are the paragraph that extends from page 7 of the addendum to page 8. That's where the district court states that the standard it understands the standard as naturally precluding, classic post-conviction argument without more. And then we see on page 14 of the addendum, the court says like non-retroactive changes, rehabilitation cannot stand alone as in extraordinary and compelling circumstances. So that analysis is impossible to square with any reasonable reading of this court's decision in Rubalcaba. In fact, this court in Rubalcaba looks at the statutory set-aside of no rehabilitation only petition granting to actually determine that non-retroactive changes may be extraordinary and compelling reasons for sentence reduction. So we do see at the very beginning of the extraordinary and compelling circumstances analysis the district court precluding the circumstance presented. So when the district court said there must be more, and it looks to the more that the district court is looking for is some other circumstance that's not what Rubalcaba demands. What Rubalcaba and Trenkler demand is that it be case specific and analyzed to the person presenting the sentence reduction motion. So once we see the error at the extraordinary and compelling circumstances stage it's impossible to separate that from the 3553A analysis. One of the things that came up listening to the argument for the government is the statement that 3553A analysis is a binary determination for whether a sentence reduction is appropriate. If that were true, then this court has to reverse because one of the things stressed, for example, in the concurrence in Rubalcaba is that courts since Kimbrough have recognized that non- retroactive legal changes may be given effect in 3553A analysis. So we have these circumstances, this precipitous drop in the guideline range that wasn't accounted for in the 3553 analysis and the outcome would have been different or at least there's enough of a possibility that it would have been different for this court to vacate and remand. Thank you very much. Thank you counsel. That concludes argument in this case.